IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Kenneth W. Simmons, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  08-CV-1337 |
| ) | |
| Sergeant Catton, ) | |
| Deputy Troyer, ) | |
| Sheriff Huston, ) | |
| Tazewell County Sheriff's Dep't, ) | |
| Tazewell County States Attorney's ) | |
| Office, and ) | |
| State's Attorney Stewart Umholtz, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  For the reasons below, the Court recommends the motion be granted in part and denied in part.

### Standard

To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim

showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted). However, the plaintiff's "' . . . allegations, [must] show that it is plausible, rather than merely speculative, that he is entitled to relief.'" Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), *citing* Twombly, 127 S.Ct. 1955. Legal conclusions, unsupported by alleged underlying facts, are not entitled to "the assumption of truth." Id. at 1951. The Court keeps in mind, however, that pro se pleadings are liberally construed. Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009).

## Allegations

These allegations are taken from Plaintiff's Amended Complaint (d/e 36), his response to the motion to dismiss (d/e 55), and from the undisputed material facts section of his first motion for summary judgment (d/e's 43), to the extent necessary to make sense of and flesh out the allegations in the Complaint.

In June 2006, Plaintiff filed a lawsuit in federal court against Tazewell County Deputy Ryan Tarby and Sheriff Huston, among others, alleging in part a Fourth Amendment claim regarding the towing of his truck. *Simmons v. Tarby*, 06-1153 (C.D. Ill., Judge McDade). Plaintiff prevailed on his Fourth Amendment claim against Tarby and two city employees, with judgment of about $950.00 entered in Plaintiff's favor in October 2008. The office of the Tazewell County State's Attorney represented Tarby, Huston and the County in that case.

Despite Plaintiff's numerous no trespassing signs, Defendant Deputy Troyer entered Plaintiff's property on April 25, 2008, purporting to be investigating a complaint of loose dogs and dog feces in the roadway in front of or near Plaintiff's house. It appears that the complainant was an individual named Larry Morgan, with whom Plaintiff has had ongoing

## Allegations

These allegations are taken from Plaintiff's Amended Complaint (d/e 36), his response to the motion to dismiss (d/e 55), and from the undisputed material facts section of his first motion for summary judgment (d/e's 43), to the extent necessary to make sense of and flesh out the allegations in the Complaint.

In June 2006, Plaintiff filed a lawsuit in federal court against Tazewell County Deputy Ryan Tarby and Sheriff Huston, among others, alleging in part a Fourth Amendment claim regarding the towing of his truck. *Simmons v. Tarby*, 06-1153 (C.D. Ill., Judge McDade). Plaintiff prevailed on his Fourth Amendment claim against Tarby and two city employees, with judgment of about $950.00 entered in Plaintiff's favor in October 2008. The office of the Tazewell County State's Attorney represented Tarby, Huston and the County in that case.

Despite Plaintiff's numerous no trespassing signs, Defendant Deputy Troyer entered Plaintiff's property on April 25, 2008, purporting to be investigating a complaint of loose dogs and dog feces in the roadway in front of or near Plaintiff's house. It appears that the complainant was an individual named Larry Morgan, with whom Plaintiff has had ongoing

neighbor disputes (d/e 55, para. 14), and who has repeatedly proven to be an unreliable informant against Plaintiff in the past. Troyer had no probable cause to believe that Plaintiff's dogs had been loose or were to blame for the mess in the road. A reasonable inquiry would have disclosed far more likely culprits.

When Deputy Troyer knocked on Plaintiff's door, Plaintiff looked out his window and asked Troyer to leave. Troyer asked Plaintiff if he knew about the dog feces in the road. Plaintiff answered in the negative and again asked Troyer to leave. Instead, Troyer looked in Plaintiff's windows. Plaintiff told Troyer that he was being filmed, at which point Troyer began looking for Plaintiff's concealed cameras in the bushes and "roam[ed] around [Plaintiff's] yard without permission." (d/e 43 p. 2, para. 12). Troyer allegedly searched Plaintiff's yard in areas not visible from the roadway. Troyer kept his hand on his gun throughout this time, allegedly making Plaintiff fear assault if Plaintiff left his home or used his dogs to get Troyer off his property. (d/e 43,p. 2 para.14). Plaintiff believes Troyer acted in concert with Morgan to harass and abuse Plaintiff, knowing that Plaintiff has a mental disability. (d/e 55, p. 4).

The Tazewell County Sheriff's Department allegedly practices a policy of retaliation against those who file lawsuits against the Department's employees. The Sheriff's Department has retaliated against Plaintiff for his prior lawsuit by encouraging others to commit crimes against Plaintiff and his family and by failing to investigate or arrest those persons. For example, on November 19, 2008, Plaintiff contacted the Tazewell County Sheriff's Department to make a report against Larry Morgan and have an unspecified incident involving Morgan investigated. Plaintiff's call was routed to Defendant Sergeant Catton, but Catton refused to answer the call, allegedly in retaliation for Plaintiff's prior lawsuit (06-1153).[1]

Defendant Stewart Umholtz, Tazewell County's State's Attorney, allegedly has also implemented a policy of retaliation against persons who win lawsuits against defendants represented by the State's Attorney's Office. Umholtz has allegedly, "on numerous occasions" encouraged Larry and Justin Morgan to commit unspecified crimes against Plaintiff in retaliation for Plaintiff's prior lawsuit and has ignored Plaintiff's complaints against Morgan. For example, on November 19, 2008 (the same day

---

[1] It appears that his prior lawsuit is what Plaintiff is referring to when he references his "claims."

Plaintiff's call to the Sheriff's Office was unanswered), Plaintiff contacted the Tazewell County State's Attorney's Office to ask that someone interview Plaintiff's witnesses, and investigate and arrest Morgan, but Plaintiff's requests were refused, allegedly in retaliation for Plaintiffs prior lawsuit.

## Analysis

### I. Fourth Amendment Claims

#### A. Search

Plaintiff asserts that Deputy Troyer unreasonably searched his property in April 2008. Troyer counters that Plaintiff alleges only that Troyer was on Plaintiff's property without permission, which is an action in trespass, not a Fourth Amendment violation. Troyer also argues that Plaintiff had no reasonable expectation of privacy in the areas into which Troyer allegedly entered, and therefore no search took place.

Troyer is correct that common law trespass is not the analysis for a Fourth Amendment claim. "[T]he threshold question in a Fourth Amendment inquiry is not whether a trespass has occurred, . . . . it is whether the government violated the plaintiff's privacy interest." Bentz v. City of Kendallville, --- F.3d —, 2009 WL 2477648 *5 (7th Cir. 2009); Oliver

v. U.S., 466 U.S. 170, 184 n. 15 (1984)("it does not follow that the right to exclude conferred by trespass law embodies a privacy interest also protected by the Fourth Amendment").  "[T]o bring a Fourth Amendment action for an unlawful search (or entry), a plaintiff must have a legitimate expectation of privacy that society recognizes as reasonable."  Bentz, 2009 WL 2477648 *4.

The Supreme Court case cited by Defendants, Oliver v. U.S., 466 U.S. 170, 180 (1984), affirmed that "that no expectation of privacy legitimately attaches to open fields."  Oliver also affirmed that "'curtilage,'" the land immediately surrounding and associated with the home", is protected by the Fourth Amendment.  Id.

In the Court's opinion, Plaintiff's allegations plausible suggest that Troyer entered into and searched Plaintiff's "curtilage" rather than simply an open field or other an area that carried no expectation of privacy. Bleavins v. Bartels, 422 F.3d 445, 452 (7th Cir. 2005)("Areas that are 'intimately connected with the ... activities' of the home include, for example, backyards.")(quoted cite omitted).  Given these allegations, it cannot be determined at this stage that Plaintiff had no expectation of privacy in the areas into which Troyer entered and searched.  Accordingly,

the Court will recommend that this claim remain in the case at this time for further development.

The court notes that Plaintiff appears to be pursuing a supplemental state claim for common law trespass against Troyer. Defendants do not address this claim, so neither does the Court.[2]

### B. Seizure

Plaintiff asserts that Troyer unreasonably seized him by "not allowing me to leave as I wanted after notice was given." (d/e 36, Amended Complaint para. 14). "Plaintiff felt that if he left his residence to enjoy his land or [his] property . . . I would be assaulted or shot by Troyer (Plaintiff has been assaulted in the past by . . . officer Tarby . . . ." (Amended Complaint para. 18). Troyer allegedly had his hand on his gun throughout the encounter and search of the property.

> Under the Fourth Amendment, a person has been seized "'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" . . . We have also referred to a seizure for Fourth Amendment purposes as "an intentional limitation of a person's freedom of movement."

---

[2]Plaintiff calls it "criminal" trespass, but this is a civil, not a criminal action. Plaintiff also appears to assert claim of "disorderly conduct," but that would be a proceeding initiated by government prosecutors, not a civil suit by one citizen against another.

Bentz v. City of Kendallville, --- F.3d ----, 2009 WL 2477648 *2 (7th Cir. 2009)(citations omitted).  "[T]o demonstrate seizure, individuals must show that they were touched by the police or that they yielded to a show of authority. . . . The governmental termination of freedom of movement must be intentional."  Belcher v. Norton, 497 F.3d, 742, 748 (7th Cir. 2007)(citation omitted).

    The Court does not believe Plaintiff's allegations, even liberally construed, plausibly suggest that he was "seized" for purposes of the Fourth Amendment.  Plaintiff alleges that Troyer had his hand on his gun during the encounter, but that alone does not plausibly suggest that Plaintiff was not free to leave his home.  According to Plaintiff, Troyer asked about the dog feces and then looked in Plaintiff's windows and poked around Plaintiff's property.   Plaintiff may have been personally been afraid to leave his home, but in the Court's opinion, Troyer's actions would not suggest to a reasonable person that he was not free to leave his home.  Plaintiff's assertion that he was afraid to use his dogs to get Troyer off the property is irrelevant to determining whether Troyer "seized" Plaintiff under the Fourth Amendment.  In sum, Plaintiff's factual allegations do not plausibly suggest

a right to relief on his seizure claim.  The Court will accordingly recommend dismissal of this claim.

## II.  Retaliation and Equal Protection Claims

Defendants are correct that their failure to investigate a citizen's complaint or to protect that citizen from the crimes of others does not violate the U.S. Constitution.  See DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 195 (1989)(due process clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other."); Tuffendsam v. Dearborn County Board of Health, 385 F.3d 1124, 1126 (7th Cir. 2004)(Constitution "limit[s] the powers of government but does not give people legally enforceable rights to demand public services and to obtain damages or other legal relief if the government fails to provide them.").  Thus, Defendants' failure to respond to Plaintiff's requests for an investigation into Morgan's alleged criminal acts and to arrest Morgan do not, alone, state a federal claim. Uneven enforcement of the law, by itself, does not make out a Constitutional claim. Tuffensdsam, 385 F.3d at 1128.

However, Plaintiff alleges more than just a failure to respond to his complaints or protect him from Morgan.  He asserts that the Sheriff's

Department and the State's Attorney's Office, as an official policy or practice, encouraged Morgan to commit criminal acts against Plaintiff and then selectively chose to investigate and prosecute Morgan's complaints against Plaintiff, while ignoring Plaintiff's complaints against Morgan, all in retaliation for Plaintiff's prior lawsuit.  Catton was allegedly acting in furtherance of this policy when he refused to answer Plaintiff's call or to investigate Plaintiff's complaints against Morgan.

> Selective prosecution violates the equal protection clause "where the decision to prosecute is made either in retaliation for the exercise of a constitutional right, such as the right to free speech or to the free exercise of religion."

Levenstein v. Salafsky, 164 F.3d 345, 352 (7th Cir. 1998), *quoting* Esmail v. Macrane, 53 F.3d 176, 179 (7th Cir. 1995).  Plaintiff's allegations may not fit neatly into a selective prosecution claim, but the gist is the same: Defendants' actions were in retaliation for Plaintiff's right to petition the government for redress.  Adverse actions taken by government actors that would not otherwise violate the Constitution become actionable under 42 U.S.C. § 1983 if done in retaliation for the exercise of a constitutionally protected right.  *See* Bridges v. Gilbert, 557 F.3d 541, 552 (7th Cir. 2009); Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir. 2008)("The First

Amendment right to petition the government for the redress of grievances extends to the courts in general and applies to litigation in particular."). Additionally, liberally construed, Plaintiff may be trying to make out a "class-of-one" equal protection claim: that Defendants have treated him differently than others similarly situated based on a "totally illegitimate animus."  *See* Maulding Development, LLC v. City of Springfield, 453 F.3d 967, 970 (7th Cir.2006); Woodruff, 524 F.3d at 553-54.

Defendants do not address these potential claims, and the Court does not believe sua sponte analysis is appropriate.  In any event, the Court believes Plaintiff has given sufficient notice of these claims to enable Defendants to file an Answer and to begin discovery. Accordingly, the Court will recommend that these claims proceed.

However, absolute immunity bars these claims from proceeding against Defendant Umholtz in his individual capacity, and Eleventh Amendment immunity bars them from proceeding against Umholtz in his official capacity.

To the extent Umholtz is sued in his individual capacity, prosecutors have absolute immunity from lawsuits challenging their decisions on whether charges should be brought or prosecuted, which necessarily

includes the decision of whether and how to follow up on citizen complaints.³  *See* Tuffensdsam, 385 F.3d at 1128; Davis v. Zirkelbach, 149 F.3d 614, 617 (7th Cir. 1998)(prosecutors' decision to commence and continue prosecuting protected by absolute immunity); Lowery v. Anderson, 225 F.3d 833, 840 (7th Cir. 2000)(in affirming denial of habeas, noting that decision whether to charge witness with a crime is within prosecutor's discretion)(superseded on other grounds as recognized by Corcoran v. Buss, 551 F.3d 703 n. 2 (2008)); Glick v. Koenig, 766 F.2d 265, 269 (7th Cir. 1985)(prosecutor absolutely immune for failing to examine evidence). This immunity applies even if a prosecutor acts maliciously, which would include retaliating against someone for exercising his First Amendment rights.  Imbler v. Pachtman, 424 U.S. 409, 427-28 (1976);  Hartman v. Moore, 547 U.S. 250, 261 (2006)( "A Bivens (or § 1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute.").⁴

---

³Plaintiff also alleges that Umholtz encouraged Morgan to commit crimes against Plaintiff, but the only examples given are Umholtz' decisions to investigate/prosecute Plaintiff while ignoring Plaintiff's complaints against Morgan.  These are all decisions protected by absolute immunity.

⁴This is not a case where prosecutors were "'performing investigative functions normally performed by a detective or police officer'", actions which are entitled only to qualified immunity.  Hampton v. City of Chicago, 349 F.Supp.2d 1075 (N.D. Ill. 2004), *quoting* Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

To the extent Umholtz is sued in his official capacity, a § 1983 claim against a defendant in an official capacity is a claim against the government entity that he or she represents, in this case the Tazewell County State's Attorney's Office.  That Office is classified as an arm of the State, not the County. Hernandez v. Joliet Police Dep't, 197 F.3d 256, 265 (7th Cir. 1999)(suit against Illinois county state's attorney office is suit against the state); Garcia v. City of Chicago, 24 F.3d 966, 969 (7th Cir. 1994)("the Illinois Supreme Court decided in 1990 that state's attorneys are state officials"–money damages not recoverable against State's Attorney in official capacity)(11th Amendment)(citing Ingemunson).  Thus, the Eleventh Amendment bars claims for money damages against the Tazewell County State's Attorney's Office and Umholtz in his official capacity. Patterson v. Burge, 328 F.Supp.2d 878, 899 (N.D. Ill. 2004)("the Eleventh Amendment prohibits private litigants from suing the state or its agencies, such as the State's Attorney's Office, for damages."); Office of Lake County State's Attorney v. Human Rights, 235 Ill.App.3d 1036, 1042 (2d Dist. 1992)(The Office of the State's Attorney is the "legal equivalent of the State itself."). The Eleventh Amendment does not bar claims for injunctive relief, but Plaintiff does not appear to seek injunctive relief.  (Amended Complaint,

d/e 36, para. 25). To the extent Plaintiff might seek injunctive relief requiring the State's Attorney's Office to investigate his complaints against Morgan and to prosecute Morgan, that relief is not available. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)("a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution. . . . .[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); Lowery, 225 F.3d 840 (in denying habeas, court noted, "We decline to impose a rule imposing the court's will upon the prosecution and we fear that to do so would violate the separation of powers."). Accordingly, the Court will recommend that Umholtz and the Tazewell County State's Attorney's Office be dismissed as defendants.

III.  Failure to Train

Plaintiff alleges that Sheriff Huston failed to train and supervise his employees to prevent them from committing the aforesaid constitutional violations.  Walker v. Sheahan, 526 F.3d 973, 977 (7th Cir. 2008)("'Inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to

the rights of persons with whom the police come into contact.'"), *quoting* Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see also* Robles v. City of Fort Wayne, 113 F.3d 732, 735 (1997). Defendants do not address this claim, and the Court does not believe a sua sponte analysis is appropriate. In any event, given that Huston will remain in the case on the retaliation and equal protection claims (if this Recommendation is adopted), the Court does not believe a sua sponte analysis would be productive.

The Court notes, though, that Plaintiff sues Sheriff Huston in his official capacity, as well as his individual capacity. A Section 1983 claim against the Sheriff Huston in his official capacity is the same as a claim against the Tazewell County Sheriff's Department. *See* Gossmeyer v. McDonald, 128 F.3d 481, 494 (7th Cir. 1997)(official capacity claim against sheriff is a claim against county sheriff's department). The same goes for the official capacity claims against Defendants Catton and Troyer. Since the Sheriff is already being sued in his official capacity, the Court will recommend, sua sponte, that the Sheriff's Department be dismissed, as well as Troyer and Catton in their official capacities only. Troyer and

Catton would remain in their individual capacities, and Huston would remain in his official and individual capacities.

WHEREFORE, the Court RECOMMENDS that Defendant's Motion to Dismiss be granted in part and denied in part (d/e 39).  The Court RECOMMENDS:

1) dismissal for failure to state a claim of Plaintiff's seizure claim under the Fourth Amendment;

2) dismissal for failure to state a claim of Plaintiff's claim that Defendants have a Constitutional duty to investigate his complaints and interview witnesses;

3) dismissal of the Tazewell County Sheriff's Department and of Defendants Troyer and Catton in their official capacities only, as redundant of Plaintiff's claims against Defendant Huston in his official capacity;

4) dismissal of Defendant Umholtz in his individual capacity on the grounds of absolute immunity; and,

5)  dismissal of Defendant Umholtz in his official capacity and of Defendant Tazewell County State's Attorney's Office on the grounds of Eleventh Amendment sovereign immunity.

The Court FURTHER RECOMMENDS that Defendants' motion to dismiss be otherwise denied.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:   September 8, 2009

*s/ Byron G. Cudmore*

_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE